UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAGAR MEGH CORPORATION, | ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| UNITED NATIONAL INSURANCE CO., | ) Case No. 12-cv-4959 ) ) Judge John W. Darrah |
| Defendant. | ) ) |
| NATIONAL REPUBLIC BANK OF CHICAGO and ST. PAUL PROTECTIVE INSURANCE CO., | ) ) ) ) ) |
| Intervening Plaintiffs. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Sagar Megh Corporation, filed a Complaint against Defendant, United National Insurance Co. ("United"), on June 21, 2012, asserting United breached its obligations to Sagar Megh under the Insurance Policy it issued and that United acted in bad faith. The National Republic Bank ("NRB") was permitted to enter the case as an Intervening Plaintiff and filed an Intervenor Complaint on August 17, 2012, amending it on June 28, 2013. St. Paul Protective Insurance Company ("St. Paul") was permitted to intervene on August 13, 2013.[1]

In the Intervening Amended Complaint, NRB asserts United breached its agreement with Sagar Megh, which in turn denied NRB, the mortgagee, the benefits due to it under the insurance policy issued to Sagar Megh. NRB also asserts United violated the Illinois Insurance Code with

---

[1] St. Paul filed a separate action against Sagar Megh, United, and Bass Underwriters on February 22, 2013. *St. Paul Protective Ins. Co. v. Sagar Megh Corp.*, Case No. 13-cv-1420.

its vexatious and unreasonable delay, in violation of 215 ILCS § 5/155, and further violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2, et seq.

NRB and St. Paul, the Intervening Plaintiffs, move jointly for partial summary judgment as to liability, contending that they are entitled to recover under the Policy regardless of any Policy defenses United asserts against Sagar Megh. United filed a cross-motion for summary judgment on Counts I and II of the Amended Intervening Complaint, on the basis that NRB had no rights under the Policy at the relevant time in question. These motions have been fully briefed.

## BACKGROUND

Local Rule 56.1(a)(3) requires a party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue . . . ." Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny each factual statement proffered by the moving party and concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to dispute the facts set forth in an opponent's statement in the manner dictated by Local Rule 56.1 results in those facts' being deemed admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Local Rule 56.1(b)(3)(C) further permits the non-movant to submit additional statements of material facts that "require the denial of summary judgment . . . ."

To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact is admitted. *See Graziano v. Village of Oak Park*, 401 F. Supp. 2d 918, 937 (N.D. Ill. 2005). Similarly, to the extent that a statement of fact contains a legal conclusion or otherwise

2

unsupported statement, including a fact which relies upon inadmissible hearsay, such a fact is disregarded. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). Only admissible evidence can be considered with a motion for summary judgment. A district court may take judicial notice of documents which are part of the public record, including pleadings from other proceedings.

The following facts[2] are taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1.[3] On March 5, 2011, a fire occurred at the Lake Motel, located at 9101 South Stony Island Avenue in Chicago, Illinois. (Pls.' SOF ¶ 1.) At that time, NRB held the first and third mortgages on the Lake Motel property, which was owned by Sagar Megh. (Pls.' SOF ¶¶ 2, 10.) The terms of these mortgages required Sagar Megh to obtain property insurance and name NRB on said policy as the additional insured. (Pls.' SOF ¶ 3.)[4]

---

[2] Admitted Statements of Material Facts by NRB and St. Paul are designated as "Pls.' SOF," with the corresponding paragraph referenced; Admitted Statements of Material Facts by United are designated as "Def.'s SOF" with the corresponding paragraph referenced. Because United improperly submitted its statements of facts in three different documents, these references also indicate the referenced docket entry.

[3] Unfortunately, NRB and St. Paul did not comport fully with Rule 56. Fed. R. Civ. P. 56(c) provides that a party asserting a fact must support that assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information . . . or other materials . . ." and the Local Rules require a party to submit and file these affidavits and other materials. Here, out of the fifteen documents NRB and St. Paul submitted in support of the summary judgment motion, they provide a bound copy of only eight of the documents and otherwise simply make references to the docket. Additionally, in some of the facts asserted, they fail to provide page number or paragraph references. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

[4] United does not dispute this fact, but correctly points out that the reference to Dkt. No. 115, Ex. A is a reference to the Insurance Policy and not to the Mortgage terms at issue.

3

*The Insurance Policy*

In September 2010, Sagar Megh completed an insurance application requesting insurance and submitted it to the KK Insurance Agency, Inc. ("KK"). (Pls.' SOF ¶ 6.) NRB was identified as a Mortgagee and Additional Interest on the application. (*Id.*) KK communicated this request for coverage to United's agent, Bass Underwriters, Inc. and requested that the policy be bound. (Pls.' SOF ¶ 7.) In United's documents relating to the Policy, there are three references to NRB as the "Mortgagee" of Sagar Megh: in Sagar Megh's application for insurance, in an "Acord form 126", and in the "Additional Interest Schedule." (Pls.' SOF ¶ 39.) United was in possession of these three documents at the time it issued the Policy to Sagar Megh. (Pls.' SOF ¶ 39.)

On September 15, 2010, United sent a quote to Bass; this quote did not state that United agreed to list NRB as a mortgage holder on the Policy, and the quote further provided, "Please review carefully. Coverages, terms and conditions offered herein may be more restrictive than those requested in your application." (Def.'s SOF Dkt. No. 223 ¶ 4.) The quote further provided that "all change requests involving any coverage or limits must be approved/confirmed by [United] prior to binding." (Def.'s SOF Dkt. No. 223 ¶ 4.) After receiving a request to reduce the premium, United sent a second quote to Bass, which again did not list NRB as a mortgage holder and contained the two provisions stated above. (Def.'s SOF Dkt. No. 223 ¶ 5.)

On September 16, 2010, United received from Bass a signed acceptance of the second quotation from KK on behalf of Sagar Megh, with the only notation being a declination of Terrorism Risk Insurance Act coverage, and requested to bind the policy. (Def.'s SOF Dkt. No. 223 ¶ 6.) The insurance binder United sent to Bass did not include NRB as a mortgage holder. (Def.'s SOF ¶ Dkt. No. 223 ¶ 7.) On September 30, 2010, United sent a complete copy of the

Policy to Bass. (Def.'s SOF Dkt. No. 223 ¶ 8.) Sagar Megh's officer and manager of the Lake Motel, Dipak Patel, received the Policy and reviewed it, though he admitted he did not read "each and every paper." (Def.'s SOF Dkt. No. 225 ¶ 2.)

When United issued the Insurance Policy to Sagar Megh, it did not include NRB as a named mortgagee. (Pls.' SOF ¶ 8; Def's SOF Dkt. No. 225 ¶ 10.) The Policy insured the Lake Motel building and property for the period of September 16, 2010 through September 16, 2011. (Pls.' SOF ¶ 9.) The Policy provides, in pertinent part:

> If we deny [the Insured's] claim because of [its] acts or because [the Insured] failed to comply with the terms of the Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder: (1) Pays any premium due under this Coverage Part at our request if [the Insured has] failed to do so; (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of [the Insured's] failure to do so; and (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

(Insurance Policy Additional Conditions § 2(d).) Subject to the terms of the Policy, a fire not caused by or resulting from a dishonest or criminal act of the insured or anyone in collusion with the insured is a covered cause of loss. (Pls.' SOF ¶ 12.)

Under the loan agreement between NRB and Sagar Megh, NRB had the right to require Sagar Megh to provide financial records and data, including insurance documents, as NRB requested such information. (Def.'s SOF Dkt. No. 225 ¶ 6.) Melissa Gudino was in charge of handling insurance claims for NRB. (Def.'s SOF Dkt. No. 225 ¶ 7.) According to Gudino, NRB's records include evidence of insurance for Sagar Megh, with policy effective periods of June 15, 2008 to June 15, 2009, and June 15, 2009 to June 15, 2010. (Def.'s SOF Dkt. No. 225 ¶ 8.) NRB asserts it first learned that it was not listed on the Policy at issue here after Dipak Patel received a letter from KK dated July 11, 2011. (Def.'s SOF Dkt. No. 225 ¶ 12.)

5

*The Endorsement*

At no point after the Policy was issued by United on September 30, 2010, through the day of the March 5, 2011 fire, did Sagar Megh or anyone on its behalf contact United to request a change to the Policy. (Def.'s SOF Dkt. No. 223 ¶ 11.) After the March 5, 2011 fire, based on communications between KK and United's agent, Bass Underwriters, an Endorsement to the Policy was issued, listing NRB as a mortgage holder under the Policy. (Pls.' SOF ¶ 14.) A broker for Bass indicated in an email on June 27, 2011, that Bass "got the approval from the carrier to add" NRB as a mortgagee in an endorsement to the Policy. (Dkt. No. 59 Ex. B-C.) The Endorsement to the Policy was sent by Bass Underwriters to KK on or about June 27, 2011. (Pls.' SOF ¶ 35; Def.'s SOF Dkt. No. 225 ¶ 16.) The Endorsement states that it is "effective September 16, 2010 at 12:01 a.m. standard time, forms part of Policy # MP0714395." (Pls.' SOF ¶ 35.) The Endorsement[5] provides, "This Endorsement Changes The Policy. . . . It is hereby understood and agreed that the following is added to this policy as mortgagee: National Republic Bank of Chicago. . . ." (Pls.' SOF ¶ 35.)

*The Fire and Ensuing Claims*

After the fire, on March 7, 2011, Sagar Megh reported the fire to United. (Pls.' SOF ¶¶ 18-19.)[6] On March 10, 2011, United hired Scientific Expert Analysis Limited "SEA" to investigate the fire in connection with the claim made by Sagar Megh to United. (Pls.' SOF ¶ 20.) United denied Sagar Megh's claim in a letter dated April 25, 2012. (Pls.' SOF ¶ 24.) In the

---

[5] United refused to produce the Endorsement during discovery, contending that the request to produce the Endorsement was not "relevant and not calculated to lead to the discovery of evidence admissible at trial." The Endorsement was not produced until 2013, in response to a subpoena of KK. (Dkt. No. 67 ¶ 37 Answer; Def.'s SOF Dkt. No. 225 ¶ 15.)

[6] The Intervening Plaintiffs assert two separate facts in two paragraphs numbered "18" – this fact refers to the *second* paragraph 18.

denial letter, United asserted that: (1) Sagar Megh failed to maintain functional smoke detectors in violation of the Policy's "Protective Safeguards" endorsement; (2) the fire was caused by Sagar Megh and/or with Sagar Megh's consent or authority; and (3) Sagar Megh made material misrepresentations and concealed material facts. (Pls.' SOF ¶ 25.)

After Sagar Megh's claim was denied by United, Sagar Megh filed suit against United on June 21, 2012, and NRB filed its intervening complaint with leave of the Court on August 17, 2012. (Dkt. Nos. 1, 16-17.) United denies NRB was supposed to be a mortgagee on the Policy and has made no payments to NRB under the Policy. (Pls.' SOF ¶¶ 27-28.)

NRB submitted a claim to St. Paul under its Mortgage Impairment Policy. (Pls.' SOF ¶ 29.) St. Paul has paid to NRB $1,257,547.36, which amounts to the balances due on both the NRB notes less a $1,000.00 per note deductible. (Pls.' SOF ¶ 30.) On February 22, 2013, St. Paul commenced a subrogation lawsuit against Sagar Megh, United, KK, and Bass Underwriters in the Northern District of Illinois, Case No. 13-cv-1420. (Pls.' SOF ¶ 31.)

**LEGAL STANDARD**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but, rather, "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith*

7

*Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not enough to oppose a motion for summary judgment, nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (citations omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In considering a motion for summary judgment, the court views the evidence in a light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). The court does not make credibility determinations or weigh conflicting evidence. *Id.* In considering cross-motions, the Seventh Circuit's "review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration is made." *Rosenbaum v. White*, 692 F.3d 593, 599 (7th Cir. 2012) (citations and internal quotations omitted).

## ANALYSIS

The Intervening Plaintiffs move for summary judgment on the claims against United as mortgagee (NRB) and subrogee (St. Paul) under the Policy, contending that no genuine issue of material fact exists that NRB is a named mortgagee on the Policy and therefore entitled to coverage. United asserts it is entitled to summary judgment on Counts I and II of NRB's Amended Intervening Complaint, because NRB had no insured status or rights under the Policy at the time of the fire on March 5, 2011.

*The Impact of the Endorsement*

The critical issue in these motions is the June 27, 2011 Endorsement to the Policy, which added NRB as a mortgage holder and, notably, states the Endorsement was "effective September 16, 2010." This retroactive effective date of the Endorsement, in the view of the Intervening Plaintiffs, gives the effect of providing coverage to NRB as a mortgage holder from September 16, 2010 onward, including the date of the fire, March 5, 2011.

Sagar Megh contacted KK Insurance Agency and completed an application for insurance on the Lake Motel property. In the application, Sagar Megh named NRB as the Additional Interest and mortgagee. KK provided the application to Bass Underwriters, Inc. In turn, Bass submitted this application to carriers, like United, and obtained quotes for coverage. In its Answer filed in the *St. Paul* action, Bass "denies that it had the authority to unilaterally bind [United]'s coverage or issue the [United] Policy." *St. Paul Protective Ins. Co. v. Sagar Megh Corp.*, Case No. 13-cv-1420, Dkt. No. 27 ¶ 17.

United sent two quotes to Bass that did *not* list NRB as a mortgage holder. United received a signed acceptance of the second quote from KK Insurance Agency, on behalf of Sagar Megh. This signed acceptance made no mention of NRB as a mortgage holder, nor did the complete copy of the Policy sent from United to Bass on September 30, 2010. This omission of NRB from the Policy remained until the June 27, 2011 Endorsement, which added NRB and asserted that the amendment of NRB as a mortgage holder was retroactive.

It is unclear from the facts here why NRB was not initially identified on the Policy. The Intervening Plaintiffs state that United "made a scrivenor's error and omitted" NRB as a mortgagee on the Policy. (Pls.' Mot. at 2.) A broker for Bass indicated in an email that it "got

the approval from the carrier to add" NRB as a mortgagee in an endorsement to the Policy. (Dkt. No. 59 Ex. B-C.) Thereafter, the Endorsement cured the omission of NRB as the mortgagee.

"The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." *Crum and Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993) (citations omitted). If the terms of an insurance policy are plain and unambiguous, "the court will afford them their plain, ordinary meaning and will apply them as written. The Court will not search for ambiguity where there is none." *Crum and Forster Managers Corp.*, 620 N.E.2d at 1078 (citations omitted).

The Endorsement specifically provides that "THIS ENDORSEMENT CHANGES THE POLICY," that "[i]t is hereby understood and agreed" that NRB "is added to this policy as mortgagee" and further advises the parties to read the Endorsement "carefully." The effective date of the Endorsement is September 16, 2010. An insurance policy and its endorsements are read together to ascertain the meaning of an insurance contract. *Mank v. West American Ins. Co.*, 620 N.E.2d 6, 8 (Ill. App. Ct. 1993) (citation omitted) (further providing, "If there is a conflict between the policy and an endorsement, the endorsement will control."). The Endorsement is unambiguous in its terms, and its purpose was to retroactively amend the Policy to name NRB as a mortgage holder.

Despite the clear terms of the Endorsement, United argues it is the terms of the Policy at the time of loss that are applicable. This position is unavailing in light of the unambiguous terms of the Policy, which includes the later-added Endorsement. "In construing the language of [a] policy, the court's primary objective is to ascertain and give effect to the intent of the parties to the contract," by construing the policy as a whole. *Travelers Ins. Co. v. Eljer Manufacturing,*

*Inc.*, 757 N.E.2d 481, 491 (Ill. 2001) (citations omitted). In view of the Policy and Endorsement terms, it is apparent the parties intended to have NRB named as the mortgagee for the full term of the Policy, from September 16, 2010, through September 16, 2011.

United contends the Intervening Plaintiffs are not entitled to recovery under the "fortuity" and "known loss" doctrines. "The fortuity doctrine excludes coverage where the insured 'expects or intends the harm to occur, which substantially increases the risk of harm regardless of when the harm occurs.'" *Zaragon Holdings, Inc. v. Indian Harbor Ins. Co.*, Case No. 08 C 111, 2011 WL 1374980, at *4 (N.D. Ill. April 12, 2011) (quoting *Pizza Magia Int'l., LLC v. Assurance Co. of America*, 447 F. Supp. 2d 766, 775 n.6 (W.D. Ky. 2006)). "If the insured knows or has reason to know . . . that there is a substantial probability that it will suffer or has already suffered a loss, the risk ceases to be contingent and becomes a probable or known loss." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1210 (Ill. 1992). Such a loss is uninsurable. *Id.*

However, "the insurer has no duty to defend or indemnify the insured with respect to the known loss *ab initio,* unless the parties intended the known loss to be covered." *Id.* (citations omitted). This is precisely what happened in this case and is why the known loss doctrine is inapplicable. The purpose of the known loss doctrine is to prevent the insured from obtaining insurance on a loss that has already occurred, or is certain to occur in the future, without the knowledge of the insurer. Here, the parties, as discussed above, added an endorsement after the loss occurred, specifically providing for coverage at the time of the loss. Therefore, the fortuity or known loss doctrines do not apply.

*Coverage*

Having determined NRB was, in fact, a named mortgagee under the Policy, a determination is necessary regarding Count II of the Intervening Amended Complaint, which alleges a breach of contract claim on behalf of NRB as the named mortgagee. NRB asserts it has a right to recovery under the Policy, as does its subrogee, St. Paul. In particular, NRB asserts it is an "innocent mortgagee" and, accordingly, entitled to recovery regardless of Sagar Megh's rights to recovery under the Policy.

Here, the Policy specifically provides that if United denied Sagar Megh's claim because of its acts or because Sagar Megh failed to comply with the terms of the Policy, "*the mortgageholder will still have the right to receive loss payment* if the mortgageholder," (1) pays any premiums due at United's request, if Sagar Megh failed to do so; (2) submits a signed, sworn proof of loss within 60 days after receiving notice that Sagar Megh failed to do so; and (3) notifies United of any change in ownership, occupancy, or change in risk known to NRB. (Insurance Policy Additional Conditions § 2(d).) The parties do not assert that any of those three conditions were required and not met. The Policy further provides, "If we [United] pay the mortgageholder for any loss or damage and deny payment to [Sagar Megh] because of your acts or because you have failed to comply with the terms of this Coverage Part: (1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and (2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired." (Insurance Policy Additional Conditions § 2(e)).

Though none of the parties identify it as such, these Policy terms appear to provide a "standard mortgagee clause." "Under such a clause, the act of a mortgagor-owner-insured cannot affect the right of the mortgage-loss payee to recover under the insurance policy. . . . The

12

effect of inclusion of such a standard clause is to create a contract between the mortgagee and insurer distinct from the contract between the mortgagor and insurer, and the insurer cannot use the defenses it has against the mortgagor against the mortgagee." *LaSalle Nat. Bank v. Federal Emergency Management Agent*, Case No. 84 C 9066, 1985 WL 2081, at *4 (N.D. Ill. July 26, 1985) (citations omitted). Therefore, United is prevented from asserting the defenses it has against Sagar Megh against the Intervening Plaintiffs.

United's only response with respect to the breach of contract claims is to enumerate the five affirmative defenses it pleaded in its Answer to the Intervening Amended Complaint, without providing any factual or legal support. Accordingly, the Intervening Plaintiffs are entitled to recover under the Policy irrespective and independent of any Policy defenses alleged against Sagar Megh.

## CONCLUSION

For the reasons stated above, the Intervening Plaintiffs' Motion for Summary Judgment [206] is granted, as NRB is entitled to coverage as a mortgagee under the Policy, and United's Cross Motion for Summary Judgment [224] is denied.

Date: November 19, 2013

JOHN W. DARRAH
United States District Court Judge

13